IN THE UNITED STATES DISTRICT COURT

FOR MIDDLE DISTRICT OF FLORIDA

CASE NO. ~~PENDING~~

6:13CV1920-ORL-37DAB

DARREN MICHAELS,
PLAINTIFF

v.

MICAMP MERCHANT SERVICES, ET AL,
A/K/A/ MICAMP SOLUTION, L.L.C.
DEFENDANT

COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES,
AND OTHER STATUTORY RELIEF

PURSUANT TO

TELEPHONE CONSUMER PROTECTION ACT
(47 U.S.C. 227 Et. Seq.),

CONSUMER PROTECTION – TELEPHONE SOLICITATION
(Fla. Sta. 501.059)

FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
(Fla. Sta. 501.201-501.213)

VIOLATIONS OF CERTAIN COMMERCIAL RESTRICTIONS
(Fla. Sta. 865.09)

AND

DEMAND FOR JURY TRIAL

Darren Michaels, pro se
1820 Kewanee Trail,
Fern Park, FL 32730
(941)822-4663

PRELIMINARY STATEMENT

On June 28, 2013, Plaintiff filed a TCPA action against defendant in Erie, Pennsylvania (PAWD) while temporarily residing in Oil City, Pennsylvania. The case was dismissed on lack of jurisdiction due to Plaintiff did not file the said civil action in his state of domicile (Florida). Dismissal for lack of jurisdiction was not dismissed on the merit of this TCPA action and may be only an inconvenience to Plaintiff, which he is within the statute of limitation to re-file this action in the proper court.

At all times relevant, Plaintiff 'DARREN MICHAELS' was an individual that has been domiciled in Florida, but was temporarily residing in Pennsylvania at the time of the TCPA violations had occurred.

Darren J. Michaels, referred to as 'Plaintiff,' and has filed this complaint, pro se, as he is not trained in the law. 'MICAMP MERCHANT SERVICES' will be referred to as 'Defendant.'

PARTIES

1. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. 153 (39) and Fla. Sta. 1.01(3).

2. Defendant are, identified as 'MICAMP MERCHANT SERVICES', ("the company") at all times mentioned herein was, "the company" and a "person", as defined by 47 U.S.C. 153 (39)(50); Local Rule 3.04(b), and Fla. Sta. 1.01(3).

3. Defendant(s) "MICAMP MERCHANT SERVICES" physical location is listed as 6930 E. Chauncey Lane Ste 210, Phoenix, AZ 85054; Phone: (800) 396-0246.

4. Defendant(s), "MICAMP MERCHANT SERVICES" started in May 1, 2007 and incorporated in August 9, 2007 in the State of Arizona as a Limited Liability Company and have alternate business names is also known as "MICAMP SOLUTION, LLC".

## FEDERAL QUESTION

11. Did defendant violate federal under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. 227, and other state laws?

## ADMINISTRATIVE REMEDIES SATISFIED

12. Plaintiff attempted to administratively resolve this matter with defendant before filing this civil action in the federal court system, without success. Prior to the filing, CEO Campbell was provided actual and constructive notices yet willfully remained silent.

13. "Notice to Agent" by American authorities is deemed as "Constructive notice to Principal".

14. Notification of legal responsibility is *"the first essential of due process of law."* Connally v. General Construction Co., 269 U.S. 385, 391. (1926).

15. A court proceeding is not a requisite of due process. *Ballard v. Hunter*, 204 U.S. 241, 255 (1907). Administrative and executive proceedings are not judicial, yet they satisfy the due process clause. *McMillen v. Anderson*, 95 U.S. 37, 41 (1877).

16. On June 7, 2013, Plaintiff sent an actual[1] and constructive[2] first notice entitled "Demand to Respond" by certified mail receipt no. 70123460000132617148. No response was made.

17. On June 20, 2013, Plaintiff sent a second and final notice entitled "Notice of Default with three (3) days to cure", via confirmed fax receipt. No response was made.

18. Silence is considered an admission of guilt in civil matters. Admissions by silence 32 AmJur 2d 253; UCC 3-502, *Dishonor;* UCC 3-505(b) *Evidence of Dishonor.* Estoppel is applied against wrongdoers not the victims. Appalachian v. Olson, 468 So. 2d 266 (Fla. 2d 1985)

---

[1] Story, Equity Jurisprudence, sec. 408; Bisham sec. 268; Pomeroy sec. 669,n. 2. Pomeroy states, *"Notice imputed to a principal through his agent, is an "Actual Notice".*

[2] *"Constructive notice is information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it.* Baltimore v. Whittington, 78 Md. 231, 27 A. 984; Acer v. Westcott, 46 N.Y. 384, 7 Am. Rep. 355." Black's Law 4th Ed., p. 1210.

FACTUAL ALLEGATIONS - Chronological Time Line of Events

19. At all times relevant to this action 'MICAMP MERCHANT SERVICES', attempted to engage in trade or commerce, under Fla. Sta. 501.203(8), as a unregistered fictitious name and is not legally registered to solicit business or contact consumers in the State of Florida

20. At all times relevant to this action 'MICAMP MERCHANT SERVICES' solicited by phone, small business loans services through a product called "CASH ADVANCE".

21. At all times relevant to this action 'MICAMP MERCHANT SERVICES', through its respondeat superior (Stephen Campbell, CEO), and managers, by possesses the authority, and responsibility to comply with Federal (TCPA) and state laws, to oversee and supervise, by putting into its company's policies and practices of its employees' conduct.

22. In *Texas v. American Blastfax, Inc.*, 164 F.Supp.2d 892, 898 (W.D.Tex. 2001), have found corporate officers may be individually liable under the TCPA. *See, e.g., Maryland v. Universal Elections*, 787 F.Supp.2d 408, 415-16 (D.Md.2011); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 775 F.Supp.2d 1316, 1321 (D.Wyo. 2011); *Baltimore-Washington Tel. Co. v. Hot Leads Co.*, 584 F.Supp.2d 736, 745 (D.Md. 2008)." *Id.* at *4.

23. Plaintiff's cell number was originally placed on the "NATIONAL DO NOT CALL REGISTRY" on September 06, 2009, as verified by the F.T.C.'s registry.

24. Plaintiff's cellular number is (941)822-4663 (Sarasota, Florida). Area code '941' is an area code is for the Florida counties of Manatee, Sarasota, and Charlotte, DeSoto County, Hardee, Polk, Highlands, Okeechobee, Glades, Hendry, Lee and Collier.

25. On May 23, 2013, at a 2:38 P.M., E.S.T., Plaintiff received defendant's FIRST, unsolicited phone call on his cellular phone from (678)820-9968, as identified by Plaintiff's caller ID. **EXHIBIT "1"**

26. An automated, pre-recorded female voice message or an artificial message, without human intervention, identified itself as a company called, *"Cash Advance"*.

27. Plaintiff states that the automated, pre-recorded female voice message, without human intervention, was attempting to solicit a business relationship and offer to contract, with Plaintiff when no such previous relationship or contract had ever existed.

28. Since the pre-recorded female voice message, without human intervention, possessed message receipt capacities, Plaintiff made vague questions as to *"who is Cash Advance?"* *"Cash Advance called my phone of (941)822-4663"*...., and inquired as to the nature of calling a "no-call" telephone number, physical location, website, etc., not to be misconstrued as voluntary expressed consent or offer to contract by implementing a business relationship.

29. On May 23, 2013, at 5:29 P.M., E.S.T., Plaintiff received a SECOND phone call on his cellular phone from (480)719-4429, identified by caller ID.  See also **EXHIBIT "1"**

30. The caller, with human intervention, identified himself as Erin Alejandrino, account manager for MICAMP, located in Scottsdale Arizona, and stated to be a wholesaler for FIRST DATA.

31. Plaintiff made no consenting statement for *"Cash Advance"* to call again or to solicit him again, yet that is exactly what had transpired within a 24-hour period.

32. Before May 23, 2013, Plaintiff never had any *prior* business dealings or contractual arrangement with a company known as "MICAMP" or a product inquiry of *"Cash Advance"* or with Erin Alejandrino, account manager of MICAMP, located in Scottsdale Arizona.

33. Plaintiff never provided *"expressed consent"* allowing Defendant to leave prerecorded messages on Plaintiff's cellular phone, within the meaning of 47 U.S.C. 227(b)(1)(A).

34. Defendant did not make any telephone calls to Plaintiff's cellular phone *"for emergency purposes"* utilizing an "automatic telephone dialing system," as described in 47 U.S.C. 227(b)(1)(A).

35. Defendant's telephone calls to Plaintiff's cellular phone utilizing an "automatic telephone dialing system" for nonemergency purposes and in the absence of any *expressed consent* by Plaintiff that violated 47 U.S.C. 227(b)(1)(A).

36. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff provided *express consent* within the meaning of the statute. The same application applies to state laws of Florida. Consent never existed.

37. Plaintiff states 1) had not expressed a request for solicitation; 2) was not in connection with an existing contract, 3) no prior or existing business relationship had ever existed as defined by Fla. Supreme in *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, (Fla.1994).

38. Plaintiff, having experienced "*unsolicited*" telemarketing calls before. In having first-hand knowledge as a recipient of "*unsolicited*" telemarketing calls, of companies utilizing "spoofing" techniques. "Spoofing" is when a telemarketer changes the Caller ID to show any desired number (U.S. number) on a recipients Caller ID display, when in fact, they may be an recruited telemarketing company and/or outside of the United States' jurisdiction.

39. Plaintiff had to play "*detective*" and act *naïve* in order to obtain competent and substantive evidence from defendant, for the record, to verify his proof of claim(s). The Eleventh Circuit has consistently held that "conclusory allegations without specific supporting facts have no probative value.." *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir.1985).

40. At no time, whether verbally or contractually, did Plaintiff grant permission to be contacted or make a business inquiry for any type of loan or financial services.

41. By the attached exhibits verifies all email conversations between the parties clearly shows defendant' responses as evasive, eluding, ambiguous, and vague when confronted with direct questioning and being unlawfully registered to conduct business in Florida. **EXHIBIT "2"**

42. On May 23, 2013, Plaintiff conducted a preliminary, due diligence search was conducted on State of Florida website, www.sunbiz.org, for public inquires of a business, corporation, or fictitious name under "MICAMP MERCHANT SERVICES". No records were found.

43. Plaintiff also conducted a preliminary, due diligence search was conducted on the Florida Department of Financial Services' website for any licensed agent known as ERIN ALEJANDRINO. No records were found. See also: email records - **EXHIBIT "2"**

44. A *reasonable* person could only assume defendant, *et al*, are not lawfully registered to *legally* transact business in Florida, and attempted to the conduct interstate business, unlawfully.

45. Plaintiff contends Defendant violated both, federal and state laws by harassing Plaintiff repeatedly, in receiving two (2) unsolicited telephone calls to his cellular telephone within a twenty-four (24) hour time-period in an attempt to solicit a business relationship and violated his right to privacy by intrusion and TCPA.

46. This civil action for damages and injunctive relief brought by Plaintiff against Defendant for federal violations of the Telephone Consumer Protection Act (T.C.P.A.) Sec. 227., 47 U.S.C. 227(b)(1), 47 U.S.C. 227(a) (iii).

47. Florida violations are also applicable, in addition to Federal law violations (TCPA).

48. Under Florida law, a tort has four elements: "1) deliberate or reckless infliction of mental suffering; (2) by outrageous conduct; (3) which conduct must have caused the suffering; and (4) the suffering must have been harsh." *Hart v. U.S.*, 894 F.2d 1539, 1548 (11th Cir. 1990).

49. Upon belief and information, Plaintiff contends Defendant were negligent their duty in *scrubbing* their solicitation lists in cross-referencing with the National *"No-Call List"*.

50. The Sixth Circuit Court of Appeals has held that damages under this section may be stacked on top of the TCPA 227(b) section covering "calls to cell phones." A consumer has the right sue up to $3000.00 per call for violations of the cell phone prohibitions and the DNC provisions. *Charvat v NMP, LLC*, 656 F. 3d 440 (6th Cir. 2011).

51. Courts may award treble the damages award if the defendant's violations were committed "*willfully or knowingly.*" Under 47 U.S.C. 227(b)(3), the courts have interpreted willfulness to imply only that an action was intentional. *Smith v. Wade*, 461 U.S. 30, 41 n.8 (1983).

52. Trebling damages is the standard set forth in 47 USC 312 F, (f) "Willful" and "repeated" defined as (1) *The term "willful", when used with reference to the commission or omission of any act, means the conscious and deliberate commission or omission of such act, irrespective of any intent to violate any provision of this chapter or any rule or regulation of the Commission authorized by this chapter or by a treaty ratified by the United States.*

    *(2) The term "repeated" when used with reference to the commission or omission of any act, means the commission or omission of such act more than once or, if such commission or omission is continuous, for more than one day.*

53. Treble damages does not require any malicious or unjustifiable conduct, but rather is satisfied by merely '*knowing*' conduct. *Alea London Ltd.*, 638 F.3d at. 776.

54. In Dubsky v. Advanced Cellular Communications, Inc., No. 2008 cv 00652, 2004 WL 503757, at * 2 (Ohio Com. Pl. Feb. 24, 2004), the court found that in the context of the TCPA, the term acting "*willfully*" means that "*the defendant acted voluntarily, and under its own free will, regardless of whether the defendant knew that it was acting in violation of the statute.*" 47 U.S.C.227(b)(3).

## COUNT I - TELEPHONE COMMUNICATIONS ACT, (47 U.S.C. 227)

55. Plaintiff alleges and incorporates the information in paragraphs 1 through 74.

56. Plaintiff and Defendant never established business relationship within the statutory meaning of 47 U.S.C. 227.

57. As a result of Defendant's negligent violations of 47 U.S.C. 227 et seq., Plaintiff is entitled to an award of $500.00 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. 227(b)(3)(B).

58. If the court finds that defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

59. Defendant demonstrated *willful* or *knowing* non-compliance with 47 U.S.C. 227(b)(1)(A) by using an automatic telephone dialing system to call Plaintiff's telephone number, which is assigned to a cellular telephone service.

60. Defendant committed two separate violations of 47 U.S.C. 227(b)(1)(A) and Plaintiff is entitled to damages of $1500 per violation pursuant to 47 U.S.C. 227(b)(3)(B).

61. Defendant calls are subject to treble damages under 47 U.S.C. 227(b)(3) as *willful, knowing, deliberate* and *intentional* which carries a damage amount of $1,500 per violation.

62. Plaintiff never gave permission to defendant to call Plaintiff's cell phone. Plaintiff is entitled to damages of $1500 per violation pursuant to 47 U.S.C. 227(b)(3)(B).

63. Plaintiff is also entitled to, and seeks, injunctive relief prohibiting Defendant from violating of the TCPA in the future.

64. Plaintiff is also entitled to an award of attorneys' fees and costs.

**COUNT II – TELEPHONE SOLICITATION, (Fla. Sta. 501.059)**

65. Defendant demonstrated *willful* or knowing non-compliance Fla. Sta. 501.059 Telephone solicitation (1)(a)"Telephonic sales call" (c)"Unsolicited telephonic sales call"

66. Sec. 7(a)(c) No person shall make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called.

67. Plaintiff is entitled under sec. (9)(a) to receive reasonable attorney's fees and costs from the non-prevailing party. And sec. 9(c) the sum of reasonable costs incurred in the action plus a reasonable legal fee for the hours actually spent on the case.

**COUNT III - DECEPTIVE & UNFAIR TRADE PRACTICES (ss. 501.201-501.213)**

68. The FDUTPA was enacted to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." *See Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286, 1292 (M.D. Fla. 2009) (*quoting* Fla. Stat. sec. 501.204(1)).

69. A claim brought under Florida's Deceptive and Unfair Trade Practices Act has 3 elements: (1) a deceptive or unfair trade practice; (2) causation; and, (3) actual damages. *See Siever*, 669 F. Supp. 2d at 1292.

70. Plaintiff is not required to show that the defendant was the principal actor involved in the violative acts, or that the defendant initiated the acts. *See Gastaldi v. Sunvest Communities, U.S.A., LLC*, 637 F. Supp. 2d 1045, 1056 (S.D. Fla. 2009). Rather, it is sufficient to plead that the defendant directly participated in the alleged behavior, even if the violation was initiated by another. *See Gastaldi*, 637 F. Supp. 2d at 1056.

71. Defendant demonstrated *willful, knowing,* and *deliberate* acts under the Florida Deceptive and Unfair Trade Practices Act.

72. Plaintiff is entitled to an individual remedy, under Fla. Sta. 501.211(1), to receive reasonable attorney's fees and costs from the non-prevailing party and the sum of reasonable costs incurred plus a reasonable legal fee for the hours actually spent on the case.

73. The court may impose a civil penalty up to $1,000 per violation with an aggregate total up to $25,000 for any 24-hour period against any person violates provisions of Fla. sta. 501.160.

## COUNT IV - "FICTITIOUS NAME ACT" (Fla. Sta.865.09)

74. Plaintiff is entitled to an individual remedy, Fla. Sta. 865.09(9)(b), to receive reasonable attorney's fees and costs and the sum of reasonable costs incurred plus a reasonable legal fee for the hours actually spent on the case pursuant to Fla. Sta. 865.09 (9)(b) PENALTIES - a party aggrieved by a non-complying business may be awarded reasonable attorney's fees and court costs necessitated by the non-complying business.

## COUNT V - INVASION OF PRIVACY – INTRUSION UPON SECLUSION

75. Defendant invaded Plaintiff's privacy by unreasonably intruding, in several occasions, upon his seclusion by calling his personal cellular phone. In a case of unsolicited telemarketing solicitation is identified as an *obnoxious* and *unwanted intrusion into the privacy* of a consumer's home. *Edenfeld v. Fane*, 507 U.S. 761, 769 (1993).

76. Defendants' intentional intrusions, physically or otherwise, upon to solitude and or seclusion of Plaintiff in a manner, which was highly offensive which other reasonable persons would preclude the same reasoning if in similar positions.

77. As a direct and proximate cause of the telephone calls that harassed, annoyed and abused Plaintiff. Defendant disturbed the peace and tranquility of his home, invaded Plaintiff's privacy and intruded upon his seclusion, was a substantial factor in bringing about harm that are outlined more fully above.

78. Defendant is liable to compensate Plaintiff for the full amount of actual, compensatory and punitive damages, as well as time and sweat equity lost, and such other relief, permitted under the law. *The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury."* Marbury v. Madison, 5 U.S. 137, 1 Cranch 137, 163, 2 L. Ed. 60 (1803).

## CONCLUSION

79. Plaintiff's sworn affidavit is based on first-hand personal knowledge of past-transpired events and supported by exhibits for the record. The purpose of this requirement is to prevent the trial court from relying on hearsay as the basis for its decision and to ensure there is an admissible evidentiary basis for the claim or my position rather than mere belief or conjecture. *Florida Dept. of Fin. Servs.* v. *Assoc. Indus. Ins. Co., Inc.,* 868 So. 2d 600 (Fla. 1st DCA 2004); 49 *Fla. Jur 2d,* Summary Judgment, sec. 39 (2006). **EXHIBIT "4"**

## DEMAND AND PRAYER FOR RELIEF

WHEREFORE, Plaintiff moves the Court grant Plaintiff the following relief sought:

1. Plaintiff seeks damages and injunctive relief against Defendant for federal violations of the Telephone Consumer Protection Act (T.C.P.A.) Sec. 227., 47 U.S.C. 227(b)(1), 47 U.S.C. 227(a) (iii).

2. Plaintiff seeks damages and injunctive relief against Defendant for Florida laws violations are also applicable, in addition to Federal law violations (TCPA).

3. As a result of Defendant's negligent violations of 47 U.S.C. 227(b)(1), Plaintiff seeks $500.00 in statutory damages for every call that violated the TCPA.

4. As a result of Defendant's willful and knowing violations of 47 U.S.C. 227(b)(1), Plaintiff seeks treble damages, as provided by statute, of up to $1,500.00 for each and every call that violated the TCPA.

5. Such other monetary award as the Court deems just and proper for violating state laws and Plaintiff's secured right of privacy.

6. An award of attorneys' fees and all related costs for Plaintiff.

7. Such other monetary award as the Court deems just and proper (a) by protecting the public from unethical conduct; (b) sufficient to punish the violations; (c) severe enough to deter others who might be prone to commit similar violations.

8. Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

9. DEMAND FOR JURY TRIAL - Plaintiff demands a trial by jury on all counts so triable.

_____ 12/13/2013
DARREN J. MICHAELS, Plaintiff

**CERTIFICATE OF SERVICE**
I HEREBY CERTIFY that a copy of the foregoing has been furnished to the USDC by U.S. postal mail service of this 13th day of December, 2013

U.S. Courthouse
401 West Central Boulevard
Orlando, Florida 32801
407-835-4200